Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska 99687-7790
(907) 864-8100

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

Trevor J. Stefano,

    Plaintiff,

v.

Amy Rabeau, Superintendent;
Chris Olson; and
Jason Brown, P.O. III,    Case No. 3:13-cv-_____-____

    Defendants.

### AFFIDAVIT OF TREVOR J. STEFANO

I, Trevor J. Stefano, declare under penalty of perjury:

1. I am the Plaintiff in the above captioned matter, being over 18 years of age, and fully competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit, and to the best of my knowledge all information stated herein is true and correct.

2. On July 26, 2012, Probation Officer Keith M. Friel classified me for out-of-state transfer. Mr. Friel found that the transfer would greatly impede my rehabilitation needs. However, Mr. Friel's recommendation not to transfer was

Affidavit of Trevor J. Stefano    Page 1 of 7
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___    Exhibit E

Case 3:13-cv-00175-SLG   Document 1-5   Filed 09/06/13   Page 1 of 7

overrode, and I was classified to transfer to Hudson, Colorado. I appealed the out-of-state transfer order, and was denied by the Director of Institutions Bryan Brandenburg on September 13, 2012.

3. On September 17, 2012, my family and I, with the assistance of private counsel, filed an Administrative Appeal in Anchorage Superior Court. The attorney moved for a stay of transfer, and on October 19, 2012, Superior Court Judge Mark Ridner found that an out-of-state transfer might impair my constitutional right to rehabilitation; however, an evidentiary hearing was needed to resolve the issue. The Superior Court ordered the Department of Corrections to keep me in the state pending the evidentiary hearing.

4. On or about November 11, 2012, I was transferred from Spring Creek Correctional Center to the new Goose Creek Correctional Center. Upon arrival at the new facility I immediately had problems obtaining my personal property, as well as staff improperly interferring with my family visits. I was required to file prisoner grievances to get any relief. I ultimately prevailed on about half of the grievance issues.

5. After transfer to the Goose Creek facility, my out-of-state transfer appeal was settled through stipulation by the parties. The Department agreed not to transfer me to Colorado.

6. Around the begining of January, 2013, I was hired as a computer instructor for the education department at Goose

Affidavit of Trevor J. StefanoPage 2 of 7
Stefano v. Rabeau, et al.Exhibit E
Case No. 3:13-cv-____-___

Creek.

7. On or about January 28, 2013, I was accepted into LSSAT. This is a substance abuse class with moral recognition therapy and anger management. I attended classes Monday through Thursday at 8:30 am until 12:00 noon.

8. On April 10, 2013, I was attending a LSSAT class. During this period of time Inmate Holton filled in for me in the computer lab. At approximately 9:00 am that morning several staff members entered the LSSAT class, and detained me. I was taken to the punitive segregation unit by Correctional officer Mosley. At this time I was not told why I had been taken to the segregation unit.

9. On or about April 13, 2013, I was given a disciplinary report. It was at this time that I learned that I had been taken to the segregation unit because security staff had found that several of the unused, stored, computers had been damaged by taking motors to use as tattoo paraphernalia

10. On or about April 18, 2013, I was provided a disciplinary hearing. This hearing was provided to me eight days after I was placed in punitive segregation. The hearing was held by three staff members, including Lt. Brumsfiel. Lt. Brumsfiel also had wrote the disciplinary report that was the subject of my disciplinary hearing. At the conclusion of the hearing the panel found me not guilty.

11. On or about April 20, 2013, I was released from punitive

Affidavit of Trevor J. Stefano
Stefano v. Rebeau, et al.
Case No. 3:13-cv-____-___

Page 3 of 7

Exhibit E

Case 3:13-cv-00175-SLG   Document 1-5   Filed 09/06/13   Page 3 of 7

segregation. This release came two(2) days after I was found to be not guilty of the alleged infraction.

12. later that same day I went to the education department to seek out my old job. I was told by Ms. Knittle, the education coordinator, that the computer lab had been closed due to the damaged computers; however, Ms. Knittle told me that Inmate Holton had been found guilty, and that his job of office assistant had come open. I told Ms. Knittle that I would like to take that job until the computer lab was reopened. Ms. Knittle verified that I was cleared to work, and hired me for the job.

13. Over the next several weeks Superintendent Rabeau, as well as Ast. Superintendent Kohut (Kohut), Lt. Brumsfiel, and P.O. Brown, performed their weekly inspection of the facility. During this period of time they inspected the education department and observed me using the inmate worker desktop computer. On a couple of the inspections Kohut and Lt. Brumsfiel said hello.

14. On or about May 10, 2013, I was sitting at the inmate worker desktop computer where I worked in the education office, when Kohut and Lt. Brumsfiel came in. Kohut leaned over the desk, breathing heavily as if angered, while Lt. Brumsfiel sat in a chair right next to me. Kohut asked "What are you doing in here?" I told him I worked in the office as the office assistant. Kohut then tells me that he does not like me

Affidavit of Trevor J. Stefano
Stefano v. Rabeau, et al.
Case No. 3:13-cv-____-___

Page 4 of 7

Exhibit E

Case 3:13-cv-00175-SLG   Document 1-5   Filed 09/06/13   Page 4 of 7

anywhere near a computer after the damage that was found to the computers in the computer lab. I explained to Kohut that I was found not guilty of damaging the computers, and was also cleared for hire into this position by Correctional Officer Richardson. Kohut, in a threating tone, told me that he didn't like it, and to "just remember Big Brother is watching," while pointing at the security camera that observed the room I worked in. I told Kohut that it's not the cameras that keep me honest. Both Kohut and Lt. Brumsfiel left the office.

15. On or about May 17, 2013, I was fired from my job in the education department. Ms. Knittle told me that she could not tell me why I was being fired, but only that she was told by her supervisor that she had to fire me from my job.

16. On or about May 24, 2013, I was summoned to the education department to fix some of my schoolwork that had been sent back by my instructor at the University of Alaska Fairbanks. Ms. Knittle told me that I could no longer be in the education office, and so I was placed in a classroom with a laptop. After completing my revisions, I returned the laptop without any damage.

17. After making those revisions, I learned that Ms. Knittle had been fired.

18. Sometime in June of 2013, Ms. Knittle contacted my criminal attorney. She told my attorney that she had been fired for

Affidavit of Trevor J. Stefano    Page 5 of 7
Stefano v. Rabeau, et al.
Case No. 3:13-cv-____-___              Exhibit E

Case 3:13-cv-00175-SLG   Document 1-5   Filed 09/06/13   Page 5 of 7

providing me with access to a laptop computer so that I could complete the necessary revisions to my college work. She told my attorney that the day I was fired she had been called to a meeting with the superintendent, Rabeau, as well as Chris Olson and Jason Brown. Ms. Knittle explained that she had been told by those staff members that while I was found not guilty in the disciplinary hearing, I was actually guilty of the infraction. She went on to explain to my attorney that the trio also informed her that my family and I were constantly causing problems for Goose Creek and the Department of Corrections, such as, complaining, lodging grievances, and filing litigation. Ms. Knittle stated that both my mother and grandmother were identified by Rabeau as members of my family that constantly caused trouble in this manner. My attorney directed Ms. Knittle to my mother so that Ms. Knittle could provide me with an affidavit attesting to those facts.

19. On or about August 3, 2012, Ms. Knittle met with my mother and provided her with an affidavit that stated that the staff at Goose Creek, as well as the office of the commissioner, were unhappy with my filing of prisoner grievances and filing administrative appeals in state court.

20. Over the last several weeks I have attempted to complete my English 212 college class. I have been met with opposition

Affidavit of Trevor J. Stefano
Stefano v. Rabeau, et al.
Case No. 3:13-cv-____-___

Page 6 of 7

Exhibit E

Case 3:13-cv-00175-SLG   Document 1-5   Filed 09/06/13   Page 6 of 7

all the way, including unnecessary delays in access to the word processor which is needed to complete the necessary corrections. Currently I have received an extension for 30 days without an extension fee; however, the delays continue.

21. All I can do now is go to the education department and request access to the word processor. I am in fear of filing a prisoner grievance because the staff will most likely retaliate against me for the filing. After experiencing punitive segregation without a hearing and without cause, I am not ambitious to repeat the expirence over. I am even fearful that this filing will invoke staff members to create false accusation in order to strip me of my personal belongings and place me in punitive segregation for filing this action. Obviously, it would not be a first time that the staff wrongly accused me of an infraction, and then placed me in punitive segregation without a hearing or a finding of guilty.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 09-04-13

*Trevor J. Stefano* (signature)

Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska 99687-7790

Affidavit of Trevor J. Stefano
Stefano v. Rabeau, et al.
Case No. 3:13-cv-____-___

Page 7 of 7

Exhibit E